**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-30348
Summary Calendar

_____


TRAVELERS INSURANCE COMPANY
and
EPCO CARBONDIOXIDE PRODUCTS INCORPORATED,

Plaintiffs,

TRAVELERS INSURANCE COMPANY,

Plaintiff-Appellant,

VERSUS

KOCH NITROGEN COMPANY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Louisiana
(95-CV-1581)

_____

September 18, 1997

Before JOLLY, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Travelers Insurance Company ("Travelers") appeals a summary

judgment in favor of Koch Nitrogen Company ("Koch"). Because there

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

is no genuine issue of material fact, we affirm.

I.

This case arises out of a 1993 explosion at the EPCO Carbondioxide Products, Inc. ("EPCO"), liquification plant located on the premises of Koch's ammonia plant facility in Sterling, Louisiana. The relationship between EPCO and Koch resulted from a series of contracts entered into by EPCO, incorporated in Illinois, and Koch's predecessor-in-interest, IMC Fertilizer, Inc. ("IMC"), also an Illinois corporation.

In 1988, EPCO and IMC signed a "$CO_2$ Purchase and Sales Agreement," an "Operating Agreement," and a "Lease Agreement."[1] The agreements provided that EPCO would operate a liquification plant to capture carbon dioxide produced as a byproduct of the ammonia plant operation. Under the agreements' terms, IMC§§and thereby its successor, Koch§§was obliged to notify EPCO if it shut down the ammonia plant. On November 8, 1993, Koch closed the ammonia plant without warning EPCO, and an explosion at the liquification plant ensued. Thereafter, Travelers, as subrogee, brought this diversity suit against Koch, seeking recovery of the monies paid to its insured EPCO as a result of Koch's alleged gross

_____

[1] In October 1991, IMC and EPCO signed an extension of the aforementioned agreements. Thereafter, Koch succeeded to all of IMC's interests in the plant and assumed its contractual obligations.

negligence.[2]

There are two relevant provisions in the Operating Agreement. First, both parties agreed that the Operating Agreement should be construed under Illinois law. Second, and more importantly, in article X of the Operating Agreement, the parties agreed as follows:

> A. Notwithstanding anything to the contrary set forth in this Operating Agreement, IMC shall not be liable to EPCO for any loss or damage of any nature incurred or suffered by EPCO occasioned by or arising from the act, default, or negligence of IMC in the purported performance or the non-performance of this Operating Agreement or any part thereof, *except* loss or damage to EPCO caused by IMC's bad faith, gross negligence or intentional breach under this Operating Agreement, *to the extent to which the same is not recoverable by virtue of the insurance of EPCO* or any guarantees, hold harmless agreements, or insurance proceeds obtained from a contractor for or supplier to EPCO.

(Emphasis added.)

In the district court, Koch moved for summary judgment on the ground that Travelers's claim was barred because its insured, pursuant to the terms of the agreement, could recover damages for gross negligence only to the extent not already covered by EPCO's insurance. Since Travelers sought recovery of the insurance money paid to EPCO that EPCO could not otherwise recover under the Operating Agreement, Koch maintained that Travelers, standing in EPCO's shoes, could not proceed.

---

[2] EPCO also sued, in its own right, to recover the amount not insured under the deductible. That suit was not part of the summary judgment and is therefore not before us on appeal.

Travelers countered, contending that the agreement should be construed under Illinois law (a point not disputed by Koch) and that Illinois courts would not enforce article X of the Operating Agreement because it is an impermissible exculpatory clause. Travelers argued that contracts limiting a party's liability for gross negligence are invalid as against Illinois public policy and that the indemnity provisions in construction contracts, in particular, are disfavored by the Illinois legislature.

The district court found that article X of the Operating Agreement was valid under Illinois law. Accordingly, it entered summary judgment for Koch on February 3, 1997. Travelers then filed a motion for reconsideration, which the district court denied on March 10, 1997. Thereafter, Travelers filed a notice of appeal "from the trial court's Judgment entered into this action on the tenth day of March, 1997, granting summary judgment in favor of Koch Nitrogen Company."

## II.

First, we must address Koch's contention that the notice of appeal serves to appeal only the denial of the motion for reconsideration and not the underlying summary judgment. It is well settled that appeal of the denial of a motion for reconsideration also serves to present the underlying judgment for appeal. *See Foman v. Davis*, 371 U.S. 178, 181 (1962); *Hogue v.*

4

*Royse City, Texas*, 939 F.2d 1249, 1251 (5th Cir. 1991).  "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities."  *Foman*, 371 U.S. at 181.


                                   III.

     We review a summary judgment de novo.  *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial.  *See Hanks*, 953 F.2d at 997.

     We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  If there are fact issues presented, we review the evidence relating to those issues, viewing the facts and inferences in the light most

                                    5

favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 327; *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

IV.

The only possible factual issue is whether Koch was grossly negligent in closing the plant without warning EPCO. In order for Koch's gross negligence (which we assume only for purposes of reviewing the summary judgment) to be a material fact issue, we must conclude that article X of the Operating Agreement does not limit Koch's liability for acts of gross negligence that are covered by EPCO's insurer. In other words, article X must be unenforceable under the law that governs the contract in order for it to matter whether Koch was grossly negligent.

In a diversity action, we are bound to apply the forum state's substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Where a choice of law issue is involved, we apply the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kuchenig v. California Co.*, 410 F.2d 222, 224 (5th Cir. 1969). Accordingly, we must determine whether the Louisiana courts would enforce the parties' choice of Illinois law to govern their contract.

Louisiana law favors parties' autonomy to select the law that

6

will apply to their contract. Contracts "are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable . . . ." LA. CIV. CODE ANN. art. 3540 (West Supp. 1996). The Louisiana courts have similarly held that "[p]arties may contractually stipulate to choice of law unless such stipulations would violate legal or strong public policy considerations." *Sentilles v. Kwik-Kopy Corp.*, 652 So. 2d 79, 81 (La. App. 4th Cir.) (citation omitted), *writ denied*, 663 So. 2d 713 (La. 1995).

The law of Louisiana regarding the relevant issue, shifting liability for a contracting party's gross negligence to the other contracting party, appears quite similar to the law of Illinois.[3] Therefore, a Louisiana court likely would apply Illinois law in the present case.


V.

Consequently, we must determine whether, under Illinois law, a contract provision shifting the risk of one party's gross negligence to another party's insurer is enforceable. Travelers

---

[3] *Compare Polozola v. Garlock, Inc.*, 343 So. 2d 1000, 1003 (La. 1977) (strictly construing indemnity clauses against one's own negligence) *and Home Ins. Co. v. National Tea Co.*, 588 So. 2d 361, 364-65 (La. 1991) (noting the limits of *Polozola*'s interference with parties' contractual preferences) *with Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022, 1029 (Ill. 1986) (construing exculpatory clauses strictly) *and Ralph Korte Constr. Co. v. Springfield Mechanical Co.*, 369 N.E.2d 561, 562-63 (Ill. App. Ct. 1977) (allowing free transfer of a party's negligence risk in the absence of harmful third-party effects).

relies on two aspects of Illinois law to argue against enforcing article X of the Operating Agreement. First, Travelers maintains that Illinois law does not favor exculpatory clauses for acts of gross negligence. Second, Travelers asserts that the Illinois Construction Contract Indemnification for Negligence Act ("ICCINA") specifically prevents the enforcement of article X. We address the latter contention first, as it helps to elucidate the considerations underlying the former.

A.

Travelers cites the ICCINA to support its claim that Illinois public policy prevents shifting the risk of loss from one's own negligence. The ICCINA provides in relevant part:

> 1. With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, [etc.], every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILL. COMP. STAT. 35/1 (West. 1995).

Travelers argues that this is a contract for the "maintenance of a building [or] structure" and therefore falls directly within the ambit of the statute. What Travelers fails to appreciate, however, is that the Illinois courts have interpreted this statute narrowly. First, because the ICCINA is meant to protect construction workers during the construction period, it is unlikely that the act encompasses agreements that contemplate performance

8

after the "construction" or "installation" period has ended. *See North River Ins. Co. v. Jones*, 655 N.E.2d 987, 992 (Ill. App. Ct.) ("[F]or incidents that occur after the alarm system is installed, alarm systems contracts fall under the tenant that parties are free to contract as they wish . . . ."), *appeal denied*, 660 N.E.2d 1272 (Ill. 1995). In this case, no one contends that this agreement has anything to do with the construction of the plant. Indeed, all parties appear in accord that the Operating Agreement concerned plant *operation*, which presumably occurred *after* completion of plant construction.

Second, and more importantly for our purposes, Illinois courts have recognized that the ICCINA was meant to protect against negative third-party effects on construction employees and the public at large. Early on, the Illinois Supreme Court noted that "[t]he legislature in enacting section 1 [of the ICCINA] may have considered that the widespread use of these agreements in the [construction] industry may have removed or reduced the incentives to protect workers and others from injury." *Davis v. Commonwealth Edison Co.*, 336 N.E.2d 881, 884 (Ill. 1975).

In this case, there is no indication that the agreement was formed to relieve IMC's incentives to take care or to externalize the risks associated with its possible negligent acts. Instead, the risks of IMC's (and then Koch's) negligence were transferred by contract to EPCO's insurer. Presumably, this transfer was not

9

gratuitous; EPCO's insurer likely demanded a higher premium from EPCO, and EPCO probably adjusted the purchase price of IMC's carbon dioxide downward to pay for this higher insurance cost.

B.

The Illinois policy disfavoring exculpatory clauses for gross negligence liability appears rooted in some of the same considerations underlying the ICCINA: to prevent the harmful external effects of such contracts on the public. *See, e.g.*, *Bastian v. Wausau Homes, Inc.*, 635 F. Supp. 201, 203 (N.D. Ill. 1986) (applying Illinois law); *Commonwealth Edison*, 336 N.E.2d at 885. Where, howeverSSas is the case hereSS"[b]oth sides benefit from the arrangement and such benefit under the circumstances does not come at the expense of a third party," Illinois courts have upheld the parties' contractual decision on how to allocate the risk of loss. *Korte*, 369 N.E.2d at 562. Indeed, in such situations, the Illinois courts have noted that "public policy itself strongly favors freedom to contract." *Liccardi v. Stolt Terminals (Chicago), Inc.*, 669 N.E.2d 1192, 1198 (Ill. App. Ct. 1996) (citations omitted).

Koch's predecessor, IMC, did not enter into this arrangement to pass off the risk of its gross negligence to unwilling and unprotected third parties. Quite the contrary. Both parties agreed that EPCO and its insurer would be the better bearers of the

10

loss and that it would be value-maximizing for the parties to insure both EPCO's and IMC's acts under EPCO's insurance policy. Travelers, in contractual privity with EPCO, was free to demand an increased premium for the increased risk or to tell EPCO to obtain a new insurer. To let Travelers out of the bargain at this point would destroy the basis of the bargain and enrich Travelers unjustly. For this reason, Travelers's subrogation claim is limited by EPCO's agreement in the contract.[4]

## VI.

Because we agree with the district court that, under Illinois law, article X of the Operating Agreement is valid and enforceable, it does not matter whether Koch was grossly negligent. Accordingly, there is no material fact issue here presented, and the judgment is AFFIRMED.

---

[4] *See, e.g.*, *Continental Cas. Co. v. Polk Bros., Inc.*, 457 N.E.2d 1271, 1273 (Ill. App. Ct. 1983) (denying a subrogee insurance company's recovery where there was a valid exculpatory clause for the tortfeasor's own negligence against the insured); *see also In re Complaint of Admiral Towing & Barge Co.*, 767 F.2d 243, 250 (5th Cir. 1985) ("[A] subrogee can obtain no greater rights than its subrogor had.").